UNITED STATES of America, Appellee,

v.

Ricky DAWN a/k/a "Money", Appellant.

UNITED STATES of America, Appellee,

v.

Aaron McCREE, Jr., Appellant.

Nos. 89–1018, 89–1019.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1989.

Decided March 8, 1990.

Rehearing Denied in No. 89–1018 May 14, 1990.

Dennis Shackleford, El Dorado, Ark., for Ricky Dawn.

Charles L. Honey, Prescott, Ark., for Aaron McCree, Jr.

Mark W. Webb, Fort Smith, Ark., for appellee.

Before BOWMAN and BEAM, Circuit Judges, and ROSS, Senior Circuit Judge.

BEAM, Circuit Judge.

Ricky Dawn and Aaron McCree, Jr. were convicted, following a joint trial, of aiding and abetting a bank robbery in violation of 18 U.S.C. §§ 2, 2113(a), (d) (1988). On appeal, Dawn and McCree both argue that the district court[1] erred in: 1) finding that the government did not use its peremptory challenges in a racially discriminatory manner; 2) denying their motions for mistrial based on extra judicial influence on the jury; 3) denying their motions for new trial

---

1. The Honorable Oren Harris, Senior United States District Judge for the Western District of Arkansas.

based on newly discovered evidence; 4) failing to hold the sentencing guidelines unconstitutional; and 5) enhancing their sentences based on the use of a firearm during the robbery. McCree also argues that the district court erred in denying his motion for severance, refusing to give an alibi instruction and requiring him to appear at trial clean-shaven and wearing clothing similar to that worn by the robber. We affirm.

## I. BACKGROUND

Dawn, McCree, Curtis Dewayne Stevens, and Verlinda Johnson[2] were jointly indicted on one count of aiding and abetting the taking of money belonging to a federally insured bank and putting the life of bank employee Janice Adcock in jeopardy by means and use of a revolver, and on one count of using a firearm during the commission of the robbery. The district court denied the defendants' motions for severance and, to facilitate Adcock's identification of McCree as the man who entered her car, ordered McCree to appear at trial clean-shaven and wearing clothing similar to the clothing worn by the robber.

At trial, the evidence established that, for several days prior to the robbery, McCree and Stevens observed the transfer of money from the First National Bank in Camden, Arkansas, to a branch bank. They discussed a plan for robbing the bank with other people, including Dawn. On the morning of January 15, 1988, Adcock picked up $55,000 from the main bank to take to the Cardinal branch. On her way to the branch, Adcock stopped behind a pickup truck at a four-way stop intersection. The truck, which was identified as a vehicle Dawn and McCree had borrowed from Stevens earlier that morning, did not proceed through the intersection in turn. Instead, someone in the pickup motioned automobiles coming from the other three directions to proceed. While Adcock waited, a man wearing a blue jogging suit approached Adcock's car from the direction of the courthouse and knocked on the car

window with a gun. Adcock identified this man as Ricky Dawn. Dawn opened the door, got in and took Adcock to an isolated area where they were met by another individual. Dawn and the other individual took the money and put Adcock in the trunk of the car.

During the trial, juror Shirley Deggs told the court that one of the defense witnesses had followed her home from the trial and refused to pass her, even when she stopped her car. Prior to informing the court, she discussed the incident with some of the other jurors. The trial judge dismissed juror Deggs and questioned each juror regarding the incident. While some of the jurors indicated that they heard juror Deggs discuss the event, each juror stated that the matter did not weigh in his or her decision regarding the defendants' guilt or innocence.

Dawn and McCree were convicted of bank robbery and acquitted of using a firearm during the robbery. Following the verdict, the defendants discovered that a county judge had seen a man dressed similarly to the robber on the county courthouse steps near where the robber had entered Adcock's car. The judge stated that he did not think the man was either Dawn or McCree. Although the judge reported this observation to the local police a few days after the robbery, the government asserted that it was unaware of the information.

The trial court denied each motion for mistrial and new trial and sentenced Dawn and McCree under the sentencing guidelines.

## II. DISCUSSION

### A. *Batson* issue

Dawn and McCree, who are black, contend that the United States used its peremptory challenges in a discriminatory manner. The prosecutor used six of his seven peremptory challenges to exclude black members of the venire from the petit jury. Dawn and McCree argue, solely on

---

**2.** Stevens entered a plea of guilty and the district court granted Johnson's motion to dismiss the indictment against her at the close of the government's evidence.

the basis of these numbers, that they established a prima facie case of purposeful discrimination under *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and that the government failed to give racially neutral explanations for the strikes as required once a prima facie case has been established.

The venire consisted of thirty-three white and thirteen black individuals. The district court conducted most of the voir dire but allowed each defendant and the prosecutor to conduct additional voir dire when it had finished. After excusing members for cause, the venire consisted of twenty-nine white and nine black members. The district court allowed the defendants a total of seventeen peremptory challenges (sixteen for the panel and one for the alternates), which the defendants exercised against white members of the venire. The court determined that the United States was entitled to seven peremptory challenges (six for the panel and one for the alternates), and the prosecutor used six of his challenges to exclude black members of the venire and one to exclude a white member. The resulting petit jury consisted of ten white and two black members and one white and one black alternate member. The excused members of the venire were dismissed and the jury was sworn.

Dawn and McCree moved to quash the jury panel or, alternatively, for a mistrial based on the prosecutor's allegedly discriminatory use of his peremptory challenges. They also requested that the court require the prosecutor to give racially neutral reasons for each challenge. The court heard the motions immediately after the jury was sworn but declined to recess at that time to allow the parties to argue the motions. The parties presented their opening statements, and the prosecutor presented several witnesses. After the jury was recessed for the day, the court gave the defendants an opportunity to be heard on the motions.

The defendants argued that they had established a prima facie case of discrimination, even though there were black jurors on the panel, because the prosecutor's use of peremptory challenges excluded a repre-sentative cross section of the community from the jury and because the prosecutor used all of his peremptory challenges to exclude blacks from the panel. Without a request from the court, the prosecutor offered the following explanations for the challenges of black members of the venire: 1) a test regarding a job application would affect the ability of one juror to be present for one day of the trial; 2) one juror was near the age of defendants, and the prosecutor preferred older, more conservative jurors; 3) one juror was inattentive and disinterested during voir dire; 4) and 5) the family histories of two jurors, obtained from law enforcement agencies prior to trial, indicated that they would not be good jurors; and 6) one juror had health and eye problems which may have affected her ability to follow the evidence.

The defendants asserted that the prosecutor's reasons were not sufficient and that voir dire relating to the family histories of the venire members was necessary to determine whether the prosecutor's reasons were racially neutral. The court denied the defendants' motions, noting that all the parties had had the opportunity to ask any questions which they felt were appropriate during voir dire and that the defendants did not inquire about the potential jurors' family histories. The defendants requested that the court make a sensitive inquiry into the prosecutor's explanations and reconsider its ruling. The defendants renewed their motions during the trial, and the court denied the requests.

The district court's denial of the motions during trial did not explicitly state that the defendants had failed to establish a prima facie case of purposeful discrimination. However, the defendants again renewed their motions for new trial following the verdicts, and the court denied these motions and clearly stated that the defendants had failed to establish a prima facie case.

We review a district court's finding of purposeful discrimination in the jury selection process as a question of fact and reverse only if the court's findings were clearly erroneous. *See United States v. Fuller*, 887 F.2d 144, 146 (8th Cir.1989).

Here, we must initially review the district court's finding that Dawn and McCree failed to establish a prima facie case of discrimination. This court recently decided that the trial court's prima facie finding also is entitled to review under a clearly erroneous standard. *See United States v. Moore*, 895 F.2d 484, 485 (8th Cir.1990). The burden of establishing a prima facie case of purposeful discrimination lies with the individual asserting that his equal protection rights have been violated. *Batson*, 476 U.S. at 94 & n. 18, 106 S.Ct. at 1721–22 & n. 18; *United States v. Temple*, 890 F.2d 1043, 1046 (8th Cir.1989) (defendant must overcome presumption that jury selection was lawful). Dawn and McCree assert that they met this burden and established a prima facie case simply because the prosecutor used six of his seven peremptory challenges to exclude black members of the venire from the petit jury.[3] While the exclusion of even one black member of the venire for racial reasons violates the equal protection clause, *United States v. Battle*, 836 F.2d 1084, 1086 (8th Cir. 1987), numbers alone are not sufficient to establish or negate a prima facie case. *See Fuller*, 887 F.2d at 146; *United States v. Washington*, 886 F.2d 154, 156 (8th Cir. 1989).

As noted by the Supreme Court in *Batson*, the district court must evaluate all the relevant facts and circumstances when making the prima facie determination. To establish a prima facie case, the defendant must show that the prosecutor exercised peremptory challenges to exclude members of the defendant's cognizable racial group[4] and that "these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race." *Batson*, 476 U.S. at 96, 106 S.Ct. at 1723. In *Batson*, the Su-

preme Court remanded for further proceedings to determine whether the facts established a prima facie case of discrimination in light of the prosecutor's use of four of six potential strikes to exclude all of the black members of the venire. *Id.* at 83, 100, 106 S.Ct. at 1725. Thus, a district court cannot base a prima facie finding solely on the number of peremptory challenges the prosecutor exercises to exclude black members of the venire. A pattern of striking blacks and the prosecutor's questions and statements during voir dire are among the factors the district court should consider when determining whether a defendant established a prima facie case. *See id.*, 476 U.S. at 97, 106 S.Ct. at 1723.

Here, the district court, based on its observations during jury selection, determined that the facts and circumstances did not support an inference of discrimination. The factors which the Court outlined in *Batson* do not support a conclusion contrary to that of the district court. The prosecutor's voir dire consisted of only a few questions concerning potential scheduling and health problems and general questions regarding experiences with the government. There was no evidence beyond the number of blacks struck to indicate a pattern of excluding blacks. Dawn and McCree did not put any facts in the record supporting the contention that the district court erred in finding that they had failed to establish a prima facie case.

As indicated, a defendant who requests a prima facie finding of purposeful discrimination is obligated to develop a record, beyond numbers, in support of the asserted violation. And, the district court, before the venire is dismissed and the jury is sworn, must give the defendant a reasonable opportunity to do so. Such a record will allow the appellate court to review the

---

3. Dawn and McCree also argued to the district court that the lack of a representative cross section of the community on the jury supported the discrimination claim. The sixth amendment fair cross section requirement applies only to the jury pool and not to the petit jury. Thus, the sixth amendment contention does not support the defendants' request for a new trial. *See*

*Holland v. Illinois*, —— U.S. ——, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990).

4. In light of the Supreme Court's recent opinion in *Holland v. Illinois*, —— U.S. ——, 110 S.Ct. 803, 107 L.Ed.2d 905 (1990), the excluded jurors may not need to be members of the defendant's race.

findings at issue.[5] This procedure should not become a trial within the trial. It should, however, involve placing in the record, for the benefit of the trial judge and an appellate court, information sufficient to shift to the government the burden of articulation required by *Batson.* On the record here, we cannot say that the district court was clearly erroneous in finding that this was not done.

### B. Extra judicial influence on the jury

■ Dawn and McCree argue that the incident involving juror Deggs prejudiced their right to a fair trial. As indicated, the district court discussed the incident with counsel and conducted a thorough investigation into its effect on the jury. Juror Deggs was dismissed from the jury, and the remaining jurors were admonished not to consider anything outside the courtroom in their deliberations. After the jury returned guilty verdicts, the court polled each juror to determine what effect, if any, the incident had on the deliberations. Also as indicated, each juror stated that the incident did not affect his or her decision. The foreperson stated that the incident was mentioned prior to beginning deliberations but was not discussed after deliberations began and that the jurors did not believe that the incident actually occurred. Trial Transcript at 944–46. Thus, the denial of the defendants' motions for new trial was not an abuse of discretion. *See United States v. Sublet,* 644 F.2d 737, 741 (8th Cir.1981).

### C. Newly discovered evidence

■ Dawn and McCree also contend that the district court erred in denying their motions for new trial based on information that County Judge Alfred Smith saw a black man wearing a blue jogging suit sitting on the steps of the Ouachita County Courthouse on the morning of the robbery, and that he thought the man was not Ricky Dawn or Aaron McCree. To justify a new trial, newly discovered evidence must, *inter alia,* be sufficient to produce a probable acquittal and be more than impeachment evidence. *United States v. Begnaud,* 848 F.2d 111, 113 (8th Cir.1988). The denial of a motion for new trial is within the district court's broad discretion and will not be reversed absent a clear abuse of that discretion. *See id.* The statement of the judge would probably not have resulted in an acquittal on retrial. And, it would primarily have been evidence offered to impeach Adcock's identification of Dawn as the robber. Therefore, the district court did not abuse its discretion in denying the motions for new trial.

### D. Other claims

■ The defendants challenge two aspects of their sentencing. They assert that the sentencing guidelines violate due process and that the court erroneously applied the guidelines. We have clearly held that the sentencing guidelines do not violate the due process clause by eliminating individual sentencing. *United States v. Brittman,* 872 F.2d 827 (8th Cir.1989). The court properly applied the guidelines to enhance the defendants' sentences based on the use of a firearm. The jury acquitted the defendants on count two, using a firearm during the robbery, but convicted them on count one, which alleged the use of a firearm. The use of a firearm does not need to be established beyond a reasonable doubt for sentence enhancement purposes. *See United States v. Ehret,* 885 F.2d 441, 444 (8th Cir.1989), *cert. denied,* — U.S. —,

---

**5.** Here, the district court did not permit the defendants to develop the record in support of their *Batson* claim until after the jury was recessed following the first day of testimony. However, the defendants did not object to the delay and do not argue on appeal that they were denied an opportunity to create a record for review in this court. Furthermore, the defendants did not request that the challenged jurors be recalled for additional voir dire to enhance the support for their prima facie case.

While the defendants presented no facts beyond the number of individuals excluded to support their claim, the prosecutor, without a request from the court, offered reasons for each strike. This is not required by *Batson* and may not even be appropriate in all circumstances. Here, however, the reasons given for the strikes provide additional support for our affirmance of the district court.

110 S.Ct. 879, 107 L.Ed.2d 962 (1990). A preponderance of the evidence is sufficient. *United States v. Sleet*, 893 F.2d 947, 949 (8th Cir.1990); *United States v. Gooden*, 892 F.2d 725, 727–28 (8th Cir.1989). Thus, the acquittal on count two does not undermine the fact that a preponderance of the evidence supported the conclusion that a firearm was used during the robbery. *See United States v. Mocciola*, 891 F.2d 13, 16–17 (1st Cir.1989).

■ Finally, McCree has not demonstrated that he was prejudiced by the joint trial and, therefore, the district court did not err in denying the motion for severance. *United States v. Lara*, 891 F.2d 669, 671 (8th Cir.1989). We also conclude that if the district court erred in refusing to give McCree's proposed alibi instruction or in requiring him to appear at trial clean-shaven and wearing specific clothing, any such error was harmless beyond a reasonable doubt. There was some evidence in the record to support the alibi defense. The court, noting that the jury could find McCree guilty of aiding and abetting the robbery without finding that he was present during the robbery, refused to give the proffered instruction which stated that the jury *must* find McCree not guilty if it found that he was not present during the robbery. Trial Transcript vol. III, at 773–74. The alibi defense was argued in closing, the jury was clearly instructed that the government had to prove all elements of the charge beyond a reasonable doubt, and the evidence against McCree was relatively strong. The error, if any, was clearly harmless. *See United States v. Webster*, 769 F.2d 487, 490–91 (8th Cir.1985).

### III. CONCLUSION

The appellants' other contentions are without merit. Accordingly, we affirm the district court.