UNITED STATES of America, Appellee,

v.

Marion PECINA, Appellant.

UNITED STATES of America, Appellee,

v.

Gregory PECINA, Appellant.

Nos. 90–2176, 90–2177.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 11, 1991.

Decided Feb. 6, 1992.

Dennis James Owens, Kansas City, Mo., argued, for appellants.

Marietta Parker, Asst. U.S. Atty., Kansas City, Mo., argued, for appellee.

Before McMILLIAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

A jury convicted Marion and Gregory Pecina of a conspiracy to distribute 50 or more grams of a mixture containing cocaine base, in violation of 21 U.S.C. § 846 (1988), and distributing five or more grams of crack cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988) and 21 U.S.C.A. § 841(b)(1)(B) (West Supp.1991). Gregory Pecina was also convicted of carrying a firearm during the commission of a conspiracy to distribute crack cocaine, in violation of 18 U.S.C.A. § 924(c) (West Supp.1991). The Pecinas appeal, arguing that there was insufficient evidence of the conspiracy and that the district court[1] erroneously admitted audiotape recordings and transcripts of telephone conversations with an undercover detective. Additionally, Marion Pecina argues that the district court incorrectly denied his motion to sever. We affirm the convictions.

Detective Ray Tisinger of the Kansas City, Missouri, Police Department was working undercover in December 1989. He came into contact with Gregory Pecina at a residence at 5708 Mersington during a drug transaction between Gregory and Bobby Hill. After this transaction, Tising-er was given Gregory's telephone pager number. Tisinger called the pager number on December 15, and Gregory returned his call. Tisinger told Gregory he wanted to buy a half ounce of crack cocaine. That same day, Tisinger returned to the house at 5708 Mersington. He was there when Gregory and Marion Pecina entered the residence. Gregory instructed Tisinger to follow him into the dining room. Gregory placed a plastic bag containing crack cocaine on the table, and Tisinger placed $600 in recorded United States currency on the table. At this time, Marion was seated just to the left of Tisinger, and also placed a clear plastic bag of what appeared to be crack cocaine on the table.

On December 19, Tisinger returned to 5708 Mersington after speaking on the telephone with a person identifying himself as "Greg's brother," and arranging for another purchase of crack cocaine. Tisinger arrived, went inside the house, and met Marion. The two of them entered the dining room, where Gregory met them. Marion asked Tisinger if he had the money and Tisinger placed $1,150 in recorded bills on the dining room table. Marion picked up the money and began to count it, and Gregory placed on the table two clear plastic bags containing crack cocaine. Gregory then began helping Marion count the money. Marion directed the officer to "hide the stuff so no one could see it," and Tisinger placed the bags in his pocket. Tisinger and Marion then had a conversation about a future purchase of a quarter kilogram of crack cocaine, and Marion told Tisinger that if contacted 30 minutes in advance, he could produce such a quantity.

On December 27, Tisinger called the pager number he had been given and Gregory returned the call. Gregory told Tisinger that he did not have the amount of cocaine that Tisinger wanted to purchase. The two made contact several hours later, and Tisinger went to 5708 Mersington and picked up Gregory. They drove to 3003 E. 59th Street, a location Gregory said was his

---

1. The Honorable D. Brook Bartlett, United States District Judge for the Western District of Missouri.

home and the place where he stored large quantities of crack. Gregory went into the house and returned with a clear plastic bag of cocaine which he sold to Tisinger for $600.

Tisinger then obtained search warrants for the East 59th Street and Mersington locations. Upon executing the warrant at the East 59th Street house on December 28, officers found Marion Pecina, as well as a pager, currency, a triple beam balance scale, and a 12–gauge shotgun. At the Mersington house, officers found Gregory Pecina, as well as a handgun he had been seen carrying, some currency hidden in a trash can, some cocaine, drug paraphernalia, and papers with figures that correlated to prices for common units of cocaine base.

The indictments followed, and a jury convicted Gregory and Marion Pecina of all counts charged against them.

## I.

■ Marion Pecina argues that the district court's refusal to sever his trial from Gregory's prejudiced him because most of the evidence presented related to Gregory.[2] Marion's argument is without merit.

■ We have held on numerous occasions that "[p]ersons charged with a conspiracy will generally be tried together, especially where proof of the charges against each of the defendants is based on the same evidence and acts." *United States v. O'Meara*, 895 F.2d 1216, 1218 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990); *United States v. Singer*, 732 F.2d 631, 634 (8th Cir.1984). We will not disturb a denial of a severance motion unless the district court abused its discretion, causing "clear prejudice to the defendant's right to a fair trial." *Singer*, 732 F.2d at 634. Clear prejudice occurs when there was an "appreciable chance" that the defendant would have been acquitted if the case had been severed. *United States v. Bostic*, 713 F.2d 401, 403 (8th Cir.1983). Disparity in the weight of the

evidence as between the two parties does not entitle one to severance. *Singer*, 732 F.2d at 635; *United States v. Anderson*, 626 F.2d 1358, 1373 (8th Cir.1980), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981) ("Separate trials ... are not necessary simply because the evidence may be more damaging against one of the defendants."). Neither does limited involvement in a conspiracy warrant severance. *United States v. Kaminski*, 692 F.2d 505, 520 (8th Cir.1982). In addition, the district court gave precautionary instructions advising the jury of the proper use of evidence as related to each defendant and each charge. The district court did not err in denying severance.

## II.

■ Both Marion and Gregory Pecina argue that the district court erred in denying their motions for judgment of acquittal because the evidence, with all reasonable inferences favorable to the United States, failed to prove their guilt of the conspiracy beyond a reasonable doubt. We have set forth the evidence above in some detail and have done so in a light most favorable to the government, as we must do when considering the propriety of a motion for acquittal. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Lee*, 743 F.2d 1240, 1250 (8th Cir.1984).

The evidence demonstrates that Gregory and Marion Pecina were working together to distribute crack cocaine. During one transaction, Marion received the money and Gregory delivered the crack. Marion warned Tisinger to hide the cocaine he had just purchased. Marion also said he would be able to sell Tisinger a quarter of a kilogram of cocaine base at a later time if he had thirty minutes advance notice. When Tisinger wanted to make a large cocaine purchase a few days later, however, it was Gregory who made the sale out of the 59th Street house, the location where officers found Marion Pecina when execu-

---

**2.** Marion Pecina also claims that he was prejudiced because the case was wrongly tried as a single conspiracy. We reject this argument, as the evidence cited above demonstrates that there was only one conspiracy.

ting the search warrant. Both men returned calls on the pager. After one phone call Tisinger made to the pager, Marion returned the page and said he would have to ask Gregory if he had the cocaine base Tisinger wanted to purchase. The district court did not err in denying the motions for judgment of acquittal.

### III.

The Pecinas' final argument is that the district court erred in admitting audiotapes of telephone conversations between Tisinger and the Pecinas without the proper foundation. Specifically, they allege that the recordings were not properly preserved and that there was insufficient identification of Marion Pecina's voice on one recording. The Pecinas also argue that the district judge improperly allowed transcripts of the audiotapes to be passed to the jury. We review these evidentiary questions under an abuse of discretion standard. *United States v. Willis,* 774 F.2d 258, 259 (8th Cir.1985) (transcripts); *United States v. Johnson,* 767 F.2d 1259, 1271 (8th Cir.1985) (audiotapes).

Our study of the record convinces us that the district court strictly followed the requirements of *United States v. McMillan,* 508 F.2d 101, 104 (8th Cir.1974), *cert. denied,* 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). Detective Tisinger testified that he accurately recorded each of the audiotapes and personally made the copies of the tapes that were played for the jury. Tisinger stated that the original recordings were "recovered and placed in the ... unit vault." He also testified that after his December 19 telephone conversation with someone identifying himself as "Greg's brother," Tisinger went to the Mersington residence, made contact with Marion there, and recognized Marion's voice as being the one Tisinger had heard earlier that day on the phone. Tisinger had also seen Marion on December 15, and heard his voice at that time.

When the transcript was passed to the jury, counsel for the Pecinas made no objection. The district court instructed the jury that the audio recording was the evidence, and any conflicts with the transcripts should be resolved on the basis of what they heard. There was no error in this respect.

We affirm the judgment of the district court.