UNITED STATES of America, Appellee,

v.

Gottfried Heinrich KELLERMANN, Appellant.

No. 92–2970.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1993.

Decided April 29, 1993.

John W. Lundquist, Minneapolis, MN, argued for appellant.

Mark Pitsenbarger, Minneapolis, MN, argued for appellee.

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

BOWMAN, Circuit Judge.

Gottfried Kellermann appeals his convictions after a jury trial in District Court [1] for making a false statement to an agency of the United States and for conspiracy to make such statements and conspiracy to defraud the United States. 18 U.S.C. §§ 371, 1001 (1988). We affirm.

1. The Honorable David S. Doty, United States    District Judge for the District of Minnesota.

Kellermann, a German national living in the United States as a resident alien since the early 1970s, is a research scientist. Kellermann and Miodrag Ristic, an expert on hemotropic diseases and a professor at the University of Illinois, founded ProtaTek International, Inc., a manufacturer of vaccines and diagnostic tests.

In 1984, Kellermann and Ristic submitted a grant proposal to the Agency for International Development (AID). The proposal, for development of a diagnostic field test for malaria, was submitted on behalf of a non-profit shell corporation, KT & R Laboratories, formed solely for the purpose of making this grant proposal. The proposal requested a budget of $750,000 to be expended over a period of three years.

James M. Erickson, then chief of the AID Communicable Disease Division, submitted the proposal to a panel of three experts to review for technical merit. Notwithstanding the experts' recommendation that the project not be funded, Erickson reported otherwise to his superiors at AID. Erickson notified Kellermann in February 1985 that the research grant had been awarded to KT & R.

After a preaward audit established that KT & R was a brand new shell corporation with no assets, Kellermann told AID that ProtaTek would furnish the equipment, laboratory space, and support services necessary to perform work under the proposal. The grant agreement required KT & R to submit vouchers to receive an advance of grant funds, as well as periodic progress reports. KT & R was required to maintain accounting records and was prohibited from paying consulting fees or awarding subcontracts without the prior written consent of AID.

After Kellermann received approval for the grant, he entered into an agreement to pay $4000 per month to International Insect Research & Development (IIR & D), a Guatemalan company in which Erickson had a financial stake, ostensibly for serum samples necessary for the planned research. All of the $88,000 paid to IIR & D under the grant eventually found its way to Erickson's personal accounts. There was no documentation that serum samples, ordinarily available from suppliers at little or no cost, were received or used in the research.

A financial audit in June 1987 uncovered serious questions about the handling of the grant funds. Agreements between KT & R and ProtaTek, Ristic, Kellermann, and IIR & D had been executed but never approved by AID as required under the terms of the grant. In fact, AID had no record of them at all. Financial records were scarce, consisting primarily of cancelled checks and bank statements. There was no documentation, such as invoices or time sheets, to support the various payments made to ProtaTek, Ristic, Kellermann, or IIR & D.

A site review by a panel of three scientific experts uncovered irregularities in the progress of the research under the grant. The lab notebooks Kellermann provided to the panel were inadequate, and in some cases reported on research unrelated to the purpose of the grant proposal. Upon questioning by the experts, Kellermann appeared to have an insufficient understanding and knowledge of the grant proposal and the research he was supposed to be doing. The review panel concluded that the grant funds expended were out of proportion to the work performed.

AID terminated the grant in October 1987, and a criminal investigation ensued. A jury convicted Kellermann of making a false statement to a government agency, and conspiracy to make false statements and to defraud the United States. He was sentenced to eight months imprisonment with five months suspended and three years probation, and was ordered to make restitution in the amount of $75,000.

■ Kellermann argues that the evidence was insufficient to convict him. We disagree. On review, we examine the evidence in the light most favorable to the verdict and give the government the benefit of inferences that reasonably may be drawn from the evidence submitted. *United States v. Jagim,* 978 F.2d 1032, 1041 (8th Cir.1992), *petition for cert. filed,* No. 92–8144 (U.S. Mar. 1, 1993). Having reviewed the record, we conclude there was substantial evidence that Kellermann made false statements to AID, not only in making his proposal in the first instance, but

also in the financial statements he made to the agency. Kellermann claims his statements were true, but that he merely categorized the itemized expenditures differently than did the government upon its review. That is, Kellermann called the expenditures payments for salaries, consulting fees, and supplies, instead of showing them as direct payments to himself, Ristic, ProtaTek, and IIR & D. There was no documentation, however, to support Kellermann's claim that the recipients of the funds performed work to warrant the payments they received. Kellermann's categorization of expenses was calculated to mislead the government as to who was receiving the funds. On this evidence, the jury easily could find Kellermann guilty beyond a reasonable doubt of making false statements to AID.

■ The same conclusion applies to the conspiracy count. There was ample evidence that Kellermann conspired with others to make false statements to the government and to defraud the United States of the grant funds. Evidence of a conspiracy need not be direct and, in fact, may be totally circumstantial. *United States v. Kroh*, 915 F.2d 326, 332 (8th Cir.1990) (en banc). There was substantial evidence that Kellermann bribed Erickson to get a grant for research that Kellermann was not qualified to perform, and persuasive evidence that Kellermann and Ristic colluded to lie to or to defraud AID.

Kellermann also contends that he was prejudiced because the District Court gave a willful blindness instruction to the jury. He claims the instruction allowed the jury to convict him of conspiracy without an adequate finding of specific intent.

Kellermann asserted that he lacked guilty knowledge of his false statements. We will not disturb the District Court's decision to give a willful blindness instruction if the evidence, viewed in the light most favorable to the government, supports a finding that any ignorance was deliberate. *See United States*

*v. Gruenberg*, 989 F.2d 971, 974 (8th Cir. 1993).

■ From the evidence before it, a reasonable jury easily could find beyond a reasonable doubt that Kellermann either had actual knowledge of his wrongdoing in making false statements to AID, or deliberately failed to make detailed inquiry into KT & R's activities before making such statements. The District Court instructed the jury as to willful blindness on the substantive count (false statement) and on Kellermann's participation in unlawful acts in furtherance of the conspiracy, that is, making the false statements. The court explicitly limited the instruction's application to the false statement count and to the acts in furtherance of the conspiracy, making it clear that the government could not rely on Kellermann's willful blindness to prove that he knowingly joined the conspiracy.[2] We conclude that the court did not err in instructing the jury on willful blindness.

Kellermann also argues that the court erred in refusing to give his tendered false statement instruction. The District Court found the proffered instruction argumentative, and that it required the government to prove more than the law requires for a finding of guilt. We agree and hold that the court did not err in refusing the instruction.

■ Finally, Kellermann argues that the District Court erred in failing to suppress a taped interview that he gave to AID agents in August 1988 before his arrest. He claims that his statements were involuntary because they were made upon threat of deportation and without benefit of counsel. We disagree. We do not see Kellermann as particularly "vulnerable," as he describes himself, to pressure or coercion from the AID agents. Kellermann has been a resident of the United States for years. He is well-educated and apparently a sophisticated businessman, having founded and directed the operations of a business incorporated in the United States (ProtaTek). At various times during the relevant period he was represented by counsel—when applying for the AID grant, setting up KT & R, and making various "con-

---

**2.** A portion of the willful blindness instruction reads: "This instruction is relevant only if the defendant, after knowingly joining the conspiracy, willfully blinded himself to a particular object of the conspiracy." Transcript Vol. VI at 114.

sulting" and subcontracting agreements, and later during the investigation of the use of the grant's funds. At the time of the interview, however, he specifically declined to consult with counsel. We hold that the decision of the District Court declining to suppress Kellermann's statement to AID agents was not clearly erroneous. *See United States v. Williams*, 981 F.2d 1003, 1005 (8th Cir.1992).

Kellermann's convictions are affirmed.