UNITED STATES of America,
Plaintiff–Appellee,

v.

Shannon Wayne AGOFSKY,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Joseph Anthony AGOFSKY,
Defendant–Appellant.

Nos. 92–3767, 92–3783.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 8, 1993.

Decided April 1, 1994.

Rehearing Denied May 10,
1994 in No. 92–3767.

Rehearing and Suggestion for Rehearing
En Banc Denied May 13, 1994 in
No. 92–3783.

Paul D. Snyder, Kansas City, MO, argued, for Shannon Agofsky.

Bruce C. Houdek, Kansas City, MO, argued for Joseph Anthony Agofsky.

Michael A. Jones, U.S. Atty's Office, Springfield, MO, argued, for appellee.

Before HANSEN, Circuit Judge, JOHN R. GIBSON *, Senior Circuit Judge, and MELLOY **, Chief District Judge.

JOHN R. GIBSON, Senior Circuit Judge.

A jury convicted Shannon and Joseph Agofsky, following a joint trial, of three charges: 1) conspiracy to rob a federally insured bank, 18 U.S.C. § 371 (1988); 2) aggravated armed robbery of a federally insured bank, 18 U.S.C. § 2113(a), (d) & (e) (1988); and 3) use of a firearm during the commission of a federal crime of violence, 18 U.S.C. § 924(c)(1) (1988). The district court [1] sentenced each of them to life imprisonment plus sixty months in accordance with the applicable sentencing guidelines.[2] On appeal, both argue the district court erred in: 1) concluding there was sufficient evidence to support the jury's verdicts; 2) denying their motions for severance; 3) refusing to give an alibi instruction; and 4) refusing to rule on certain pro se motions prior to sentencing. Shannon Agofsky also argues that the district court erred in refusing to declare a mistrial after allegedly improper prosecutorial statements and in denying his motions to suppress evidence. We affirm the convictions.

On Friday morning, October 6, 1989, an assistant cashier, Pauline Coonrod, discovered that the State Bank of Noel, located in rural southwest Missouri, had been robbed during the night. A subsequent examination of the bank revealed empty bullet casings, vault keys (normally kept in a desk) in the vault door, overturned empty teller drawers, and the surveillance camera with spray paint covering its lens and two indentations later determined to be the result of .45 caliber

---

* The HONORABLE JOHN R. GIBSON was Circuit Judge of the United States Court of Appeals for the Eighth Circuit at the time this case was submitted, and took senior status on January 1, 1994, before the opinion was filed.

** The HONORABLE MICHAEL J. MELLOY, Chief United States District Judge for the Northern District of Iowa, sitting by designation.

1. The Honorable Russell G. Clark, Senior United States District Judge for the Western District of Missouri.

2. The Agofskys each received sentences of five years on Counts I (conspiracy) and III (firearms), and life imprisonment on Count II (aggravated robbery). The sentences under Counts I and II are to run concurrently, while the sentence under Count III is consecutive.

bullets. In all, $71,562.25 was stolen, including a substantial amount in rolled coins. Dan Short, the bank president, was missing.[3] Short's truck was located later Friday morning in a parking lot three miles from Noel. The truck bed contained seven rolls of pennies.

On October 11, Short's body was found floating in Grand Lake of the Cherokees, near Cowskin Bridge. Investigators found a chair, a concrete block, and a chain hoist attached with gray duct tape to Short's left ankle. A wallet found on the body contained Short's identification. After conducting an autopsy and reviewing Short's dental records, Dr. Robert Hemphill determined the body to be that of Short, and submitted a death certificate that listed drowning as the cause of death. Following a lengthy investigation, Shannon and Joseph Agofsky were arrested. A jury convicted them on all counts and this appeal followed.

## I.

The Agofskys argue that there was insufficient evidence to support the jury's verdicts. Shannon Agofsky contends that the government offered no evidence that he entered into an agreement to rob the State Bank of Noel. He also claims insufficient evidence exists of his participation in the substantive aggravated robbery and firearm crimes. Joseph Agofsky makes similar arguments, asserting a lack of evidence indicating an agreement and inadequate direct evidence linking him to the substantive crimes.

■ We must affirm the Agofskys' convictions "if, viewing the evidence in the light most favorable to the government and giving the government the benefit of all reasonable inferences, ... a reasonable fact-finder could have found guilt beyond a reasonable doubt." *United States v. Brown,* 956 F.2d 782, 785 (8th Cir.1992) (quoting *United States v.*

*Foote,* 898 F.2d 659, 663 (8th Cir.), *cert. denied,* 498 U.S. 838, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990), *and cert. denied,* 498 U.S. 938, 111 S.Ct. 342, 112 L.Ed.2d 307 (1990)); *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1941). The jury must resolve conflicts in testimony and judge the credibility of witnesses. *United States v. Nelson,* 984 F.2d 894, 898–99 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2945, 124 L.Ed.2d 693 (1993). We must affirm if substantial evidence exists to support the verdicts. *Glasser,* 315 U.S. at 80, 62 S.Ct. at 469; *United States v. Thomas,* 992 F.2d 201, 204 (8th Cir.1993).

■ We begin by considering the government's evidence against Shannon Agofsky.[4] The government introduced expert testimony identifying four separate fingerprints of Shannon Agofsky, recovered from the tacky side of duct tape used to bind Short to the chair. Two of the prints were recovered from the tape found attached to Short and the chair. The other two came from a piece of tape washed up nearby which, the evidence showed, had been torn from the tape found on the chair. A government expert testified that, in his opinion, the prints were placed as the tape was removed from its spool. The government also introduced testimony of Shannon Agofsky's detailed admission to a fellow inmate during which Agofsky explained how he used a gun to kidnap the banker and rob the bank. The government's additional evidence linking Shannon Agofsky to the robbery included his access to a van similar to one used by the perpetrators, testimony by Short's neighbor that a man looking like Shannon had been in front of Short's house a few days before the robbery, Shannon's possession of a gun like the one used in the crime, and his possession of eight rolls of nickels at the time of his arrest.[5] This evidence, with all reasonable inferences which favor the government, supports the jury's

3. Substantial evidence existed to indicate that Short had been abducted. A number of Short's papers and related items were found in his yard. His eyeglasses, which he needed to read or drive, remained on his nightstand.

4. The record in this case includes ten volumes of transcripts. We do not attempt to recount all of

the evidence, but limit our discussion to those facts relevant to our disposition.

5. One hundred nickel rolls were stolen. The nickel rolls later found in Shannon Agofsky's possession were similar in color to other nickel rolls left at the bank, and none were minted after 1989, the date of the robbery.

firearm and aggravated armed robbery convictions, and indeed, Shannon Agofsky's involvement in Short's death.

■ Shannon Agofsky also contests the adequacy of the government's evidence of a conspiracy. A conspiracy requires the government to prove beyond a reasonable doubt that there was an agreement to achieve an illegal purpose, that the defendant knew of this agreement, and that the defendant intentionally joined the conspiracy. *United States v. Rogers,* 982 F.2d 1241, 1244 (8th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 3017, 125 L.Ed.2d 706 (1993). Due to the highly secretive nature of conspiracies, however, an agreement may be inferred from the surrounding circumstances. *Id.; United States v. Kellermann,* 992 F.2d 177, 179 (8th Cir. 1993) ("Evidence of a conspiracy need not be direct and, in fact, may be totally circumstantial."); *United States v. Kroh,* 915 F.2d 326, 332 (8th Cir.1990) (en banc). The government meets its burden if it proves that the defendants acted in concert to achieve a common goal, *Hamling v. United States,* 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974), or acted with a tacit understanding, *United States v. Powell,* 853 F.2d 601, 604 (8th Cir.1988). The fact that the identity of some or all other members of the conspiracy remains unknown will not preclude a conspiracy conviction. *United States v. Smiley,* 997 F.2d 475, 479 (8th Cir.1993).

■ The government presented ample evidence implicating Shannon Agofsky in an agreement to rob the State Bank of Noel. There was considerable evidence that Shannon Agofsky did not carry out the crime alone. Several witnesses testified of simultaneous use of multiple vehicles. One witness saw three vehicles, including one which looked like Dan Short's pickup, stopped on the Main Street bridge in Noel at approximately 3:00 a.m. on October 6, 1989. Another witness saw a pickup and a brown van on Cowskin Bridge at 3:30 a.m. Furthermore, the government showed that the collective weight of Dan Short, the chair, the chain hoist and the cement block exceeded 250 pounds. From this, the jury could reasonably infer that more than one person was required to lift Short over the three foot railing on the Cowskin Bridge.

Gant Sanders, a friend of Shannon Agofsky, testified that Joseph Agofsky questioned him in September 1989, only one month before the robbery, about the availability of bank blueprints prepared by Sanders' father during a past remodeling of the bank. Shannon was present during this discussion. Sanders also related a late September conversation between himself and the Agofskys about the possible kidnapping of a banker. After identifying a man entering the salvage garage where the three men were talking as a Joplin banker, Joseph Agofsky explained how the three could easily follow the banker home, take him to the bank, and force him to open the vault. Sanders also testified about how Shannon Agofsky had once discussed the possibility of driving a tow truck through the wall of the Noel Bank. Shannon knew, from a relative, that the walls were constructed of concrete blocks. Just days before the robbery occurred, a man who "looked similar" to Shannon Agofsky was seen twice near Short's home. Finally, in 1990, after the robbery, Sanders saw Joseph and Shannon Agofsky "wiping" firearms and ammunition for the stated purpose of preventing fingerprints from being present on any spent bullet casings. A reasonable juror could believe, based on this evidence, that Shannon Agofsky participated in a conspiracy to rob the Noel Bank.

■ We are similarly convinced that sufficient evidence supports the jury's verdicts against Joseph Agofsky. Once the existence of "a conspiracy is established, even slight evidence connecting a defendant to the conspiracy may be sufficient to prove the defendant's involvement." *United States v. Akers,* 987 F.2d 507, 511 (8th Cir.1993) (quoting *United States v. Ivey,* 915 F.2d 380, 383 (8th Cir.1990)). In addition to the evidence discussed above, the government presented evidence that Joseph Agofsky asked a bank employee in June 1989 where Short lived. The government also showed that despite being unemployed, Joseph Agofsky spent at least $18,986.67 in the 16 months following the robbery for which there was no documented source. He also admitted to taking

some tires from his mother's shed, although he denied seeing the chain hoist that had been left nearby. Finally, a fellow inmate testified that Joseph Agofsky admitted to participating in the crimes.

■ From this evidence a reasonable juror could conclude that Joseph participated in the conspiracy to rob the Noel Bank. As a co-conspirator, Joseph Agofsky is liable for all reasonably foreseeable substantive crimes committed by his co-conspirators in furtherance of the conspiracy. *United States v. Williams*, 902 F.2d 675, 678 (8th Cir.1990) (citing *Pinkerton v. United States*, 328 U.S. 640, 645–48, 66 S.Ct. 1180, 1183–84, 90 L.Ed. 1489 (1946)). Although the issue has not been fully raised, we have reviewed the entire record, and we have no doubt that a reasonable juror could convict on the aggravated robbery and firearm charges.

## II.

■ Before trial, both defendants filed motions to sever. Each argues on appeal that the court committed reversible error in denying his motion. We will reverse such a ruling only with a showing of clear prejudice and an abuse of discretion. *U.S. v. Nelson*, 988 F.2d 798, 806 (8th Cir.1993). "[P]ersons charged with a conspiracy will generally be tried together...." *Id.* (quoting *United States v. Pecina*, 956 F.2d 186, 188 (8th Cir.1992)). A severance is not required "merely because the evidence against one defendant is more damaging than the evidence against another." *United States v. Garrett*, 961 F.2d 743, 746 (8th Cir.1992) (quoting *United States v. Davis*, 882 F.2d 1334, 1340 (8th Cir.1989), *cert. denied*, 494 U.S. 1027, 110 S.Ct. 1472, 108 L.Ed.2d 610 (1990)). Rather, "the defendant 'must make a showing of real prejudice by demonstrating that the jury was unable to compartmentalize the evidence as it related to [the co-defendants].'" *Id.* (quoting *United States v. Givens*, 712 F.2d 1298, 1300 (8th Cir.1983), *cert. denied*, 465 U.S. 1009, 104 S.Ct. 1005, 79 L.Ed.2d 237 (1984)).

Each of the Agofskys directs this court to evidence presented by the government at trial that pertained only to the other. Joseph points to Shannon's possession of rolled nickels, Shannon's admissions made while in custody, and Shannon's fingerprints on the tape binding Dan Short. Similarly, Shannon Agofsky stresses evidence that Joseph Agofsky planned to rob the bank, Joseph's incriminating admissions, and his unexplained spending habits. They each argue the presence of this testimony prevented the jury from being able to compartmentalize the evidence.

The trial involved only two defendants charged with three counts each. No complex issues were involved. In such situations, the "jury undoubtedly is capable of properly compartmentalizing the evidence." *Garrett*, 961 F.2d at 746 (quoting *Davis*, 882 F.2d at 1340) (affirming refusal to sever two-defendant, five-count indictment for drug and firearm offenses). Accordingly, we conclude the district court did not abuse its discretion in refusing the appellants' severance requests.

## III.

The Agofsky's next contend that the district court erred in refusing alibi instructions. The offered instructions, identical but for the applicable name, stated in part that "[i]f, after considering all the evidence, you have a reasonable doubt that [defendant] was present, then you must find him not guilty." Both defendants offered alibi evidence. The court stated, however, that "[t]he tendered instruction was erroneous in that it directed the jury to find defendant not guilty if it found he was not present at the time and place of the alleged crime." *United States v. Agofsky*, No. 92–05006–01–CR–SW–4, Order at 3 (Nov. 10, 1992). Accordingly, the court refused their proposed instructions because the defendants "could have been found guilty as such without actually being present at one or more of the crime scenes." *Id.*

■ An alibi instruction would not have been appropriate in this case. Count I charged a conspiracy. Since a conspirator may be held liable for acts of his co-conspirators, he may not assert an alibi defense. *United States v. Anderson*, 654 F.2d 1264, 1270–71 (8th Cir.1981), *cert. denied*, 454 U.S. 1127, 102 S.Ct. 978, 71 L.Ed.2d 115 (1981), *and cert. denied*, 454 U.S. 1156, 102 S.Ct. 1030, 71 L.Ed.2d 314 (1982). The Agofskys

argue that the offered instruction related only to Counts II (bank robbery) and III (firearms). These counts, however, were submitted on both direct participation and accessory theories. The Agofskys offered no objection to the government's submission on the accessory theory. Thus, the jury could have convicted the Agofskys of aiding and abetting even if they offered persuasive alibis. *See United States v. Dawn*, 897 F.2d 1444, 1450 (8th Cir.), *cert. denied*, 498 U.S. 960, 111 S.Ct. 389, 112 L.Ed.2d 400 (1990). In any event, as in *Dawn*, the Agofskys' "alibi defense was argued in closing [by one of the defendants], the jury was clearly instructed that the government had to prove all elements of the charge[s] beyond a reasonable doubt, and the evidence against [them] was relatively strong." *Id.* Under these circumstances, such error was clearly harmless beyond a reasonable doubt. *Id.*

### IV.

■■■■ The Agofskys also ask this court to remand for resentencing because the district court refused to rule on several pro se motions filed by Sheila Agofsky Billbe, their mother, on their behalf while they were still represented by counsel. They contend the district court's refusal was plain error. Billbe, however, was neither a litigant nor a licensed attorney. Thus, she lacked authority to act as an attorney before the court. *Valiant–Bey v. Morris*, 620 F.Supp. 903, 904 (E.D.Mo.1985) (rejecting documents signed by inmate's jailhouse "counselor"), *dismissed*, 786 F.2d 1168 (8th Cir.1986); *see Osei–Afriyie v. Medical College of Pa.*, 937 F.2d 876 (3d Cir.1991) (non-lawyer parent barred from representing minor children in federal court). Moreover, the court did not grant the Agofskys' counsel leave to withdraw until after sentencing. Thus, they were represented by counsel when their mother filed the various motions.[6] There is no constitutional or statu-tory right to simultaneously proceed pro se and with benefit of counsel. *Brasier v. Jeary*, 256 F.2d 474, 478 (8th Cir.), *cert. denied*, 358 U.S. 867, 79 S.Ct. 97, 3 L.Ed.2d 99 (1958); *Munz v. Fayram*, 626 F.Supp. 197, 198 (N.D.Iowa 1985), *dismissed*, 786 F.2d 1169 (8th Cir.1986). Thus, although the Western District of Missouri has not followed the many jurisdictions[7] adopting an explicit rule barring pro se filings by represented parties, we find no error in the court's refusal to rule on the Agofskys' "pro se" motions.

### V.

■■■■ Shannon Agofsky argues the district court erred in overruling his motion to suppress the results of an "inventory search" of his car, which resulted in the discovery of eight nickel rolls. The record shows that the motion was timely filed and renewed at trial. The relevant facts are undisputed. The nickels were discovered when Sergeant Steven Russell of the Rogers, Arkansas, Police Department stopped and arrested Shannon Agofsky in December 1990 at an intersection in Rogers pursuant to an unrelated federal arrest warrant. Because inventory searches are required to be made at the location of a stop whenever possible, Russell conducted an inventory search of the car. The search disclosed a red backpack containing an unzipped pouch of eight rolls of nickels. The car was then towed to the impound lot. We review de novo the district court's application of the law to the facts. *United States v. Layne*, 973 F.2d 1417, 1420 (8th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1011, 122 L.Ed.2d 160 (1993).

■■■■ The police may inventory property in their possession when they do so in accordance with standard operating procedures. *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 741, 93 L.Ed.2d 739 (1987); *United States v. Marshall*, 986 F.2d 1171, 1175 (8th Cir.1993). These procedures may be written,

---

6. We have considered Joseph Agofsky's argument that his counsel's lack of involvement at the sentencing hearing demonstrates that Agofsky, in fact, proceeded pro se, but conclude it is without merit. Accordingly, we need not address his argument that the court erred in permitting him to proceed pro se without warning him of the dangers of self-representation.

7. *See, e.g.*, D.C.Alaska, General Rule 3; D.C.Ariz., Rule 8; C.D.Cal., Rule 2; M.D.Fla., Rule 2.03; S.D.Fla., Rule 16; D.C. Idaho, Rule 83.7; D.C.N.M., Rule 83; D.C.Ore., Rule 110–5; M.D.Tenn., Rule 1; E.D.Wash., Rule 1.2; W.D.Wash., General Rule 2.

but established unwritten procedures are also sufficient. *United States v. Lowe*, 9 F.3d 43, 46 (8th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1229, 127 L.Ed.2d 573 (1994). The Rogers Police Department's procedures authorize inventory searches, but set certain limits. The relevant procedures require that the "arrested person … be given an opportunity to get some responsible person to take charge of the vehicle." However, "[i]f no responsible person is found within a reasonable time, the vehicle will be impounded."

 Nothing in the Fourth Amendment requires a police department to allow an arrested person to arrange for another person to pick up his car to avoid impoundment and inventory. *Bertine*, 479 U.S. at 372, 107 S.Ct. at 741; *Lowe*, 9 F.3d at 46 n. 4; *Davis*, 882 F.2d at 1339. The only question before us is whether the district court erred in determining that Sergeant Russell's conduct did not so exceed the Rogers Police Department's policy as to warrant suppression. Russell testified that Rogers is forty-five minutes away from the town of Noel. He knew that Shannon Agofsky had a female acquaintance in Rogers, but no other known friends or relatives in the area. He testified that he was looking for Agofsky and checked the female friend's house immediately before the arrest, and found she was not at home. He concluded he could not wait forty-five minutes for someone to come from Noel, and accordingly impounded the car. There was no evidence indicating anything other than good faith on the part of Sergeant Russell. Agofsky concedes that Sergeant Russell stopped him on an unrelated arrest warrant, and not in an attempt to gather evidence for the Noel bank investigation. Thus, this appears to be a case where "reasonable police regulations" were "administered in good faith." *United States v. Thomas*, 992 F.2d 201, 204 (8th Cir.1992). We decline to speculate about Sergeant Russell's subjective intent. The presence of an investigatory motive, even if proven, does not invalidate an otherwise lawful inventory search. *United States v. Lewis*, 3 F.3d 252, 254 (8th Cir. 1993) (per curiam). Furthermore, we are convinced that even if the nickel rolls were wrongfully admitted, the admission was harmless beyond a reasonable doubt.

## VI.

 Shannon Agofsky also contends that the district court erred in admitting Short's dental records. Agofsky asserts the government failed to provide an adequate foundation for the admission of the records because the records were provided by a dentist who purchased the practice of Short's dentist. At trial, defense counsel made only a general objection which the court overruled. "Reversal is not required with regard to alleged improper admission of exhibits without specific foundation, in the absence of a specific objection on foundation grounds." *United States v. Michaels*, 726 F.2d 1307, 1314 (8th Cir.) (quoting *United States v. Willis*, 482 F.2d 1034, 1040 (8th Cir.), *cert. denied*, 414 U.S. 1112, 94 S.Ct. 841, 38 L.Ed.2d 738 (1973)), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984); *United States v. Wagoner*, 713 F.2d 1371, 1377 (8th Cir.1983). Moreover, because of the government's additional evidence of identity, including Short's wallet found on the body, the presence of Short's clothing, the body's approximate size and shape and the circumstantial evidence pointing to Short as the victim, any error was harmless beyond a reasonable doubt. *See Arizona v. Fulminante*, 499 U.S. 279, 308–09, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991).

## VII.

Shannon Agofsky's final argument attacks the district court's refusal to declare a mistrial after statements during closing argument which he claimed were improper. The statements were made in the context of the parties' respective characterizations of the lack of evidence connecting the empty bullet casings found at the bank to a particular gun owned by one of the defendants. The testimony before the jury showed that Joseph Agofsky voluntarily relinquished two .45 pistols for testing. Although evidence existed that Shannon owned a .45 pistol as well, he never provided a gun for testing. Nonetheless, Shannon Agofsky's attorney argued in closing that the government "could have matched [the casings to the Agofskys' guns], ladies and gentlemen, if they had come from

the weapons of these two boys." But, "they didn't tell you that because they didn't match up." In response to the inference that Shannon Agofsky's guns had been tested, the government argued:

> [The defense] [m]ade a point that we could not trace the shells to the .45 that Shannon had had (sic) prior to the bank robbery. Well, no. We don't know where it is. We still don't know where it is. Wouldn't we have like[d] to have seen it? But it wasn't given to us.

 Shannon Agofsky argues these statements created an inference to the jury that the burden of producing the gun rested with him. The district court concluded that the prosecutor's statements "were not an improper response to defense counsel's closing remarks." We reverse a district court's refusal to declare a mistrial only if we conclude the court abused its broad discretion. *United States v. Collins*, 996 F.2d 950, 954 (8th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 412, 126 L.Ed.2d 359 (1993). After carefully considering the record, we conclude the court did not abuse its discretion in refusing to declare a mistrial. The isolated language quoted by the appellant is, at most, ambiguous. Thus, we decline to reverse the ruling of the district court, which heard the manner and context in which the statement was made.

We affirm the convictions.