# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2333MN

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the District |
| v. | * | of Minnesota. |
| | * | |
| William Eugene Mayfield, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  October 22, 1998
Filed:  December 1, 1998

_____

Before FAGG, ROSS, and WOLLMAN, Circuit Judges.

_____

FAGG, Circuit Judge.

After the district court denied his motion to suppress a gun seized in a warrantless search, William Eugene Mayfield pleaded guilty to being a felon in possession of firearm in violation of 18 U.S.C. § 922(g)(1). Mayfield now appeals, asserting the district court should have granted his motion to suppress. We affirm.

On August 22, 1997, Minnesota state troopers were intercepting drivers who violated the occupancy requirements for use of the car pool lanes on an interstate freeway in Minneapolis. Two troopers were stationed at the bottom of the entrance ramp, out of the sight of entering drivers. Two other troopers were positioned at the

top of the ramp to catch drivers who entered the ramp, then tried to avoid the troopers at the bottom by backing up or going over the curb. Mayfield drove 150 feet down the entrance ramp in the car pool lane. Although Mayfield had a passenger and thus could lawfully use that lane, he stopped when he saw the troopers at the bottom of the ramp. After ten seconds, he backed the car off the ramp onto a street. The officers at the top of the ramp saw Mayfield's evasive maneuver, which violated the traffic laws, and stopped him. During questioning, Mayfield gave troopers false identification by using a drivers license that belonged to someone else. The officers arrested Mayfield.

The troopers determined Mayfield's passenger was the car's registered owner, but she could not drive because her license was expired and she was taking medication that kept her from driving. The troopers told the owner the car would have to be towed. The owner asked for a ride to a doctor's appointment, and one of the troopers obliged her. Because the car was being towed to a private lot, troopers conducted an inventory search of the vehicle at the scene. Inside the trunk, officers found a jacket that contained drugs, a large sum of cash, and a handgun. Given the presence of the contraband, the officers determined the car would be towed to the state patrol's district office instead. With the focus shifting from routine impoundment to a criminal inquiry, the officer conducting the inventory did not complete the standard inventory form, but a few days after the car was towed, an officer prepared an inventory of the items that had been seized from the car.

On appeal, Mayfield first asserts the gun seized from the car's trunk should be suppressed because the officers' decision to impound the car violated state patrol policy. Mayfield contends that under the policy, the officers should have allowed the car's owner to make another arrangement for the car's custody.

The state patrol impoundment policy provides that "the arrestee shall be allowed a reasonable time to make arrangements to have someone of his/her choice to take custody of the vehicle. . . . We are not required to allow the arrestee to leave the car

locked and on the highway." Here, the arrestee was Mayfield, who did not own the car. The logical person to take custody of the car, its owner, was Mayfield's passenger. She informed the officers she could not drive because of her medication, and she lacked a driver's license. Rather than objecting to impoundment, she asked for a ride to a doctor's appointment and received one. Under these circumstances, we conclude the decision to impound the vehicle "did not so exceed the [state patrol] policy as to warrant suppression." United States v. Agofsky, 20 F.3d 866, 873 (8th Cir. 1994). It appears the troopers applied the impoundment policy in good faith. See id. The troopers were not constitutionally required to choose a less intrusive way of securing the car. See United States v. Davis, 882 F.2d 1334, 1339 (8th Cir. 1989). We conclude the decision to impound the car was reasonable, and thus did not violate the Fourth Amendment. See Agofsky, 20 F.3d at 873.

Mayfield also challenges the inventory search of the car. After lawfully taking custody of an automobile, police may search the automobile without a warrant to produce an inventory of the automobile's contents. See South Dakota v. Opperman, 428 U.S. 364, 376 (1976). The intrusion is justified by governmental interests in protecting the owner's property while it remains in police custody, in protecting the police against claims or disputes over lost or stolen property, and in protecting the police from potential danger. See id. at 369. The Fourth Amendment is not offended if, considering the totality of the circumstances, the inventory search is reasonable. See id. at 373. Inventory searches are reasonable when they are conducted according to standardized police procedures. See id. at 372; see also Colorado v. Bertine, 479 U.S. 367, 374 (1987). Compliance with procedures merely tends to ensure the intrusion is limited to carrying out the government's caretaking function. See Opperman, 428 U.S. at 374-75. This does not mean that inventory searches are always unreasonable when standard procedures are not followed, however. See United States v. Woolbright, 831 F.2d 1390, 1394 (8th Cir. 1987) (failure of police to complete inventory of arrestee's belongings as policy provided after finding drugs in arrestee's suitcase did not render inventory search unreasonable where police changed plans and decided to transfer

arrestee to federal authorities); <u>United States v. Trullo</u>, 790 F.2d 205, 206 (1st Cir. 1986); <u>see also</u> <u>United States v. Whren</u>, 517 U.S. 806, 816 (1996) (although adherence to procedures shows lack of pretext, deviation from procedures does not prove pretext).

Mayfield contends the search of the car violated the state patrol policy because the officers failed to inventory the items left in the car after the evidence was removed. The inventory policy provides, "The purpose of an inventory search is to protect the Trooper from subsequent claims of loss or stolen property and . . . from dangerous instrumentalities. With this purpose in mind, Troopers shall conduct a detailed inspection and inventory of all impounded vehicles that will include the opening of all containers and the listing of their contents."

The search in this case was undertaken according to established procedure. Once the drugs were found, the place of impoundment changed from a private lot to the state patrol's district office. Although the inventory list started at the scene was not completed as it should have been, the seized items were listed on an evidence form later, and there were no other items of value in the car according to the suppression hearing testimony of Trooper Ludford. The district court found the inventory search was not "a pretext or ruse for a general search for incriminating evidence." We see no error in this finding. Indeed, there is no evidence the police acted in bad faith or for the sole purpose of investigation. <u>See</u> <u>Bertine</u>, 479 U.S. at 372. Considering all of the circumstances, we conclude the inventory search in this case was reasonable, and thus did not violate the Fourth Amendment.

Having concluded neither the impoundment nor the search violated the Fourth Amendment, we affirm the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.