UNITED STATES of America, Plaintiff-Appellee, No. 90–5043

v.

John Henry JOHNSON, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee, No. 90–5048

v.

Lynell Caprice LLOYD, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee, No. 90–5063

v.

Ronald FIELDS, a/k/a John Doe, a/k/a Kato, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee, No. 90–5337

v.

Juwana Anquanette BATES, Defendant-Appellant.

UNITED STATES of America, Plaintiff-Appellee, No. 90–5795

v.

James DALY, Defendant-Appellant.

Nos. 90–5043, 90–5048, 90–5063, 90–5337 and 90–5795.

United States Court of Appeals, Fourth Circuit.

Argued April 11, 1991.

Decided August 14, 1991.

Susan Hayes, argued (Anne A. Isaac, on brief), Greensboro, N.C., for defendant-appellant Lloyd.

David Ferris Tamer, Winston–Salem, N.C., for defendant-appellant Fields.

Kenneth Clayton Dawson, Winston–Salem, N.C., for defendant-appellant Daly.

Robert L. Johnson, Anne R. Littlejohn, Greensboro, N.C., for defendant-appellant Bates.

David Bernard Smith, Asst. U.S. Atty., Senior Litigation Counsel, argued (Robert H. Edmunds, Jr., U.S. Atty., on brief), Greensboro, N.C., for plaintiff-appellee.

Before SPROUSE and WILKINSON, Circuit Judges, and GODBOLD, Senior Circuit Judge of the United States Court of Appeals for the Eleventh Circuit, sitting by designation.

## OPINION

PER CURIAM:

This is a multi-defendant drug case tried in the Middle District of North Carolina. Appellants Johnson, Bates, Daly, Lloyd, and Fields were indicted along with others in an indictment and a superseding indictment charging these counts:

*One*: From May 1989 to September 28, 1989, conspiracy to possess cocaine with intent to distribute, and conspiracy to distribute crack, in North Carolina, Georgia, the Southern District of New York, and elsewhere. Defendants Johnson, Daly, Bates, Lloyd, Fields, and Kaysanni Lytsse Townsend.

*Two*: On or about September 28, 1989, maintaining a place in North Carolina for the purpose of distributing crack. Defendants Johnson, Daly, and Fields.

*Three*: On or about September 28, 1989, possession of 384 grams of crack in North Carolina with intent to distribute. Defendants Johnson, Daly, Bates, and Fields.

*Four*: On or about September 28, 1989, possession in North Carolina of 21.3 grams of crack with intent to distribute. Defendants Johnson and Townsend.

*Five*: Johnson and Townsend, in North Carolina, carried or used firearms in relation to a drug transaction crime.

Townsend pleaded guilty to Count One pursuant to a plea agreement. She testified as a witness for the government and is not a party to this appeal.

### Johnson

Johnson was convicted under Counts One, Three and Four. He was acquitted of the possession of weapons charge under Count Five. The court, however, accepted the recommendation of the presentence report and imposed a two-level increase for possession of a firearm during commission

of the offense, under 2D1.1(b)(1) of the *Federal Sentencing Guidelines.*

■ There is no merit to Johnson's contention that there was insufficient proof that he possessed any weapon during the commission of any of the offenses for which he was convicted. The proof need only show that he possessed the weapons "during commission of the offense," *Federal Sentencing Guidelines,* 2D1.1(b). There is no merit to the contention that proof of possession of weapons during commission of the offenses of conviction required proof of precisely concurrent acts, for example, gun in hand while in the act of storing drugs, drugs in hand while in the act of retrieving a gun from the Townsend home or returning the gun to the home. "During commission of" is not so narrow in its meaning. *United States v. Khang,* 904 F.2d 1219 (8th Cir.1990), relied on by Johnson, is not applicable. There it was stipulated that the firearms were not connected with drugs. The court could consider the facts concerning weapons possession despite the acquittal on that charge. *United States v. Isom,* 886 F.2d 736, 738 n. 3 (4th Cir.1989). Four handguns were found at the home of coconspirator Townsend in Greensboro, North Carolina. Townsend testified that Johnson brought the weapons to her home. On several occasions Johnson stored drugs at Townsend's home. He had a key to the house to give him entry. On the night before his arrest Johnson came to Townsend's house, retrieved one of the guns, left the residence with it, and returned a few minutes later. On the day he was arrested he left guns at Townsend's home and crack hidden in one of her shoes.

### Bates

■ Bates was convicted under Count One. The court did not err in calculating the amount of cocaine with which she was involved. She does not contest the inclusion of 221.076 grams found in Townsend's residence and traceable to delivery in late September 1989. Rather she contests the inclusion of 500 grams that had been brought from New York in August 1989 on the ground that this occurred before she became a member of the conspiracy. But the evidence adequately supports Bates' involvement in the distribution of the crack transported from New York in August although the transportation from New York occurred before she was shown to have joined the conspiracy. Prior to September 1 arrangements had been made for someone to "drive round" a rental car in Greensboro, which meant driving street salesmen from the Townsend residence or other point of origin to an area of the city known as "the Grove" where many sales were made, and to other places that dealers would want to go, such as for meals. Wanda Smith had been performing as driver, but she left Greensboro for a time. On September 1, in a telephone conversation, Smith inquired who was "driving the rental car around" and was told the driver was Bates. The evidence permitted an inference that the cocaine being distributed around September 1, when Bates was serving as driver, was cocaine from the 500–gram August shipment.

### Daly

■ Daly was convicted under Count One (conspiracy) and Count Three (possession with intent to distribute). The court denied his motion for judgment of acquittal, and we consider the sufficiency of the evidence.

The major thrusts of Daly's arguments rest on his premise that the testimony of co-conspirators Smith and Townsend was "mainly hearsay" and that there was insufficient independent evidence of a conspiracy to permit consideration of hearsay statements of a coconspirator. But there was substantial testimony by Smith describing acts and events participated in by Daly that Smith herself had observed, plus a statement by Daly himself in a conversation that Smith had heard. Also, Smith had rented, and had driven, a Chrysler that the members of the conspiracy used. She observed Daly with three of the conspirators in this rented Chrysler at a house on Azalea Drive, in Greensboro, that was used as a site for receiving, packaging, and distributing cocaine. Later Daly came to the

Azalea Drive house driving the rental Chrysler. Before his arrival there was no cocaine at the residence. Daly talked with conspirator Jordan at the residence, and Daly said that he "just couldn't get to it because there were too many people looking out their window." Daly and Jordan left the house and came back in about five to ten minutes, and Jordan had crack in her possession. In an ensuing conversation between Jordan and Daly, Jordan said "it was small." Jordan bagged some of the crack and then she rode with Daly to take Johnson to the Grove.

On the day that police made a consent search of the Azalea Drive residence Daly was at the house with Jordan. They were tricked into leaving the house by a police-instigated telephone call saying that Smith had been in an accident. When police searched the house they found cocaine. Daly's connection with the house was further demonstrated by the officers finding in the house his duffle bag containing his personal effects and papers. The evidence was sufficient on both the conspiracy count and the possession count to require that the motion for judgment of acquittal be denied.

### Fields

■ Fields pleaded guilty to Count One, the conspiracy count. The court did not err in denying a motion by Fields for a downward adjustment of sentence on the ground that he accepted responsibility for his criminal conduct. The court found that he had demonstrated no remorse and that, despite evidence to the contrary, he denied having anything to do with firearms involved in the criminal enterprise.

■ Fields also contends that the court erred in a two-level upward adjustment of his sentence on the ground he possessed firearms during the course of the conspiracy. This is wholly lacking in merit. There was testimony that he buried the firearms, that two of the guns belonged to him, and that he cleaned the guns. The court was not clearly erroneous in finding that Fields was an organizer or supervisor and accordingly making an up-

ward adjustment of two levels. Testimony stated that, among other things, he helped to recruit Wanda Smith, arranged for a person to haul cocaine from New York and promised payment to him, and asked Townsend to go to New York.

### Lloyd

■ Lloyd was convicted on the conspiracy charge, Count One. She was sentenced pursuant to a Base Offense Level of 36, which requires conviction of an offense involving 500 grams of cocaine or more. She contends that her Base Offense Level should have been 34, based upon more than 150 but less than 500 grams.

Initially the presentence report indicated that Lloyd was involved in distribution of 1,000 grams of cocaine base. She objected to the amount. An addendum to the report was filed, which said:

> Upon further consultation with the Assistant U.S. Attorney and the Defense Counsel, it has been determined that the Defendant should be held accountable for only 500 grams of cocaine base reflecting her lack of participation in the distribution of cocaine base obtained on a second trip to New York. This reduction, however, does not affect the offense level assigned in the offense. The Defendant further objects to utilization of the amount of 500 grams, stating that an exact amount of crack cocaine from the New York trip had never been established. The sworn trial testimony, however, revealed that approximately 500 grams of cocaine was brought back from the first New York trip; therefore, this was the amount that was utilized for purposes of offense level computation.

The district court made no findings relating to amount other than adoption of the presentence report. We agree with Lloyd that the court's factfinding procedures were not sufficient. The court may approximate the quantity of controlled substance where there has been no seizure. Application Note 2 of § 2D1.4 of the *Sentencing Guidelines*. But, as this Note suggests, supporting factors that lead to

**388**

the approximation must be present, and they must be the subject of findings.

The government does not suggest that the presentence report's estimate of "approximately 500 grams" was alone sufficient when adopted by the district court. Rather it suggests that there was evidence showing that Lloyd was involved in the distribution of an additional shipment of cocaine brought from Atlanta and distributed in Greensboro, which made the total amount of her involvement exceed 500 grams. But the district court made no findings relating to such an additional involvement.

Lloyd's sentence must, therefore, be vacated.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.