**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael Andrew HUNTER,**
**Defendant–Appellant.**

**No. 92–5761.**

United States Court of Appeals,
Fourth Circuit.

Argued July 29, 1993.

Decided Feb. 28, 1994.

**ARGUED:** Michael Glenn Howell, Asst. Federal Public Defender, Raleigh, NC, for Appellant. Kristina Lynn Ament, U.S. Dept. of Justice, Washington, DC, for Appellee. **ON BRIEF:** Margaret Currin, U.S. Atty., Jane Jolly, Asst. U.S. Atty., Washington, DC, for Appellee.

Before RUSSELL, WIDENER, and HALL, Circuit Judges.

### OPINION

DONALD RUSSELL, Circuit Judge:

Defendant Michael Andrew Hunter appeals the district court's enhancement of the

sentence he received for several drug offenses. We find no error in the enhancement and affirm.

## I.

On March 27, 1992, James Ward drove defendant Hunter to a Hardee's restaurant near La Grange, North Carolina, where Hunter had arranged to make a sale of crack cocaine to John Rea. Unbeknownst to Hunter, Rea was an undercover agent for the North Carolina Bureau of Investigation.

Hunter had stashed the crack cocaine he intended to sell to Agent Rea a short distance away, and Hunter and Rea left Hardee's in Rea's car to pick it up. Hunter instructed Rea to turn left from Hardee's parking lot onto State Road 1327 and then, at the first intersection, right onto State Road 1503. Ward followed the car in which Hunter and Rea were riding for a brief time, then disappeared.

After defendant Hunter and Agent Rea had turned onto State Road 1503, Hunter expressed momentary uncertainty about conducting the transaction and asked Rea to make a U-turn. He overcame this anxiety quickly, however, and directed Rea to stop the car. Hunter then exited the car and returned with a paper bag containing crack cocaine.

At this point, Ward reappeared on State Road 1503. Seeing Ward, Hunter told Rea, "That's my man." Rea gave Hunter money for the crack cocaine, then tried to arrest him. Hunter eluded Rea, however, ran to Ward's car, and jumped into it. Ward attempted to drive away, but he and Hunter were apprehended by the surveillance team that had been observing the drug sale. A search of Ward's car revealed a .357 magnum pistol under the driver's seat.

Hunter was indicted for several drug offenses and for carrying a firearm during a drug crime. He was acquitted on the firearms charge, but convicted on the other charges. The district court sentenced Hunter to 151 months imprisonment, which included a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possessing a firearm in connection with a drug offense. The district court found this enhancement appropriate because of the pistol found under the driver's seat in Ward's car after Ward attempted to aid Hunter in escaping.

## II.

■ Hunter challenges the district court's enhancement of his sentence under U.S.S.G. § 2D1.1(b)(1). Section 2D1.1(b)(1) provides for enhancement "[i]f a dangerous weapon (including a firearm) was possessed" in connection with the defendant's drug offense. Hunter argues that he did not, merely by fleeing from the scene of a drug transaction in a car with a firearm under the driver's seat, "possess" a firearm in connection with his drug offense for the purposes of section 2D1.1(b)(1). We disagree.

Application Note 3 of the Guidelines Commentary accompanying section 2D1.1(b)(1) indicates that a defendant "possesses" a firearm in connection with his drug offense "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *See Stinson v. United States,* — U.S. —, —, 113 S.Ct. 1913, 1920, 123 L.Ed.2d 598 (1993) (stating that Guidelines Commentary that does not conflict with the Constitution, a federal statute, or a Guidelines provision is binding). Here, Ward drove Hunter to meet Agent Rea for Hunter's drug transaction, then reappeared in his car on State Road 1503 during the transaction, at which point Hunter exclaimed "[t]hat's my man." Ward then attempted to drive away with Hunter after the transaction when Hunter was fleeing from Agent Rea. This evidence establishes that Hunter and Ward had planned for Ward to pick up Hunter in Ward's car after Hunter's drug transaction with Agent Rea. Hunter could reasonably have foreseen that a firearm would be present in a car that was picking him up after a drug transaction, and we cannot say that it was clearly improbable that the firearm under the passenger seat in Ward's car was connected with Hunter's drug offense. Moreover, we affirmed a section 2D1.1(b)(1) enhancement under almost identical circumstances in *United States v. White,* 875 F.2d 427, 433 (4th Cir.1989).

■ Another issue raised by Hunter's case is whether conduct for which he was charged but acquitted could then properly be considered as a basis on which to enhance his sentence under the Sentencing Guidelines. The government charged that Hunter's conduct in leaving the scene of his drug transaction in a car containing a firearm violated 18 U.S.C. § 924(c)(1), which prohibits "us[ing] or carr[ying] a firearm ... during and in relation to any ... drug trafficking crime." The jury acquitted Hunter on this charge. After Hunter was convicted on other charges, however, the district court enhanced his sentence under section 2D1.1(b)(1) because he had left the scene of the drug transaction in a car containing a firearm.

We recently addressed this same issue of whether acquitted conduct can be considered to enhance a sentence under the Sentencing Guidelines, however, and concluded that it can be so considered. *United States v. Nelson,* 6 F.3d 1049, 1057 (4th Cir.1993). As we are bound by *Nelson,* we must find, and Hunter concedes in his brief, that the district court did not err in enhancing his sentence on the basis of conduct for which he was acquitted.

## III.

For the reasons stated, we affirm the enhancement under U.S.S.G. § 2D1.1(b)(1) of Hunter's sentence.

*AFFIRMED.*

K.K. HALL, Circuit Judge, concurring:

I concur in the judgment and opinion of the court, but I join the final two paragraphs of Part II only because I am bound as a member of a panel to apply the precedent [1] of this circuit.

1. *See United States v. Nelson,* 6 F.3d 1049, 1057 (4th Cir.1993); *United States v. Morgan,* 942 F.2d 243 (4th Cir.1991); *United States v. Johnson,* 943 F.2d 383 (4th Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 667, 116 L.Ed.2d 758 (1991); *United States v. Romulus,* 949 F.2d 713 (4th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1690, 118 L.Ed.2d 403 (1992).

2. *See, e.g., United States v. Concepcion,* 983 F.2d 369 (2nd Cir.1992), *cert. denied,* — U.S. —,

## I.

There was a time when "[t]he law 'attache[d] particular significance to an acquittal.'" *United States v. DiFrancesco,* 449 U.S. 117, 129, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980) (quoting *United States v. Scott,* 437 U.S. 82, 91, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978)). That was a time before the advent of the sentencing guidelines, under which punishment is methodicly tallied up and meted out with little regard for acquittals, and sometimes with no regard at all.[2]

In *United States v. Concepcion,* 983 F.2d 369 (2nd Cir.1992), in opinions concurring in the panel's judgment and dissenting from denial of rehearing *en banc,* Judge Newman detailed the background causes of the bizarre meaninglessness of acquittal under the guidelines. *Id.* at 393–396. The root of it all seems to be the idea that every flexible, unstructured aspect of pre-guidelines sentencing procedure can and should be incorporated into a strict new order based on discrete fact-finding. Everything a pre-guidelines court could have considered is identified, classified, and quantified. Though these facts and considerations have now assumed vital importance, the guidelines leave the rules of evidence and burden of proof in their relaxed, pre-guidelines state. The only important role the actual offense of conviction plays is to set an absolute upper or lower statutory limit on the sentence. The sentence can be based on all manner of other "relevant" criminal conduct, uncharged or even charged and acquitted. The sentencing hearing is at bottom a mini-trial of the defendant's guilt or innocence of these many charges, initiated not by a grand jury but by a probation officer, with facts found by a preponderance rather than beyond a reason-

114 S.Ct. 163, 126 L.Ed.2d 124 (1993), where a defendant's guidelines range for two weapons offenses was identical to the range he would have faced had he been convicted, rather than acquitted, of a narcotics conspiracy. Moreover, without inclusion of the narcotics conspiracy in the defendant's "relevant conduct," his guidelines sentence would have been roughly twenty years shorter. *Id.* at 393 (Newman, J., concurring).

able doubt, and with no right to a jury as finder of fact. Finally, as Judge Newman pointed out, the "convictions" obtained at sentencing are "price[d] ... at exactly the same level of severity as convicted conduct." *Concepcion,* 983 F.2d at 394. As regards uncharged "relevant conduct," this pricing is at best a poor policy choice; as regards charges on which the jury has acquitted the defendant, it is just wrong.

In short, though it stands alone against the crescendo of the other courts of appeals,[3] I agree with the Ninth Circuit that a defendant ought not be punished for a charge on which he has been acquitted in the very same proceeding.[4] *United States v. Brady,* 928 F.2d 844 (9th Cir.1991).

## II.

Aside from the larger issue of "relevant"-but-acquitted conduct, I have some concern about the particular enhancement for "possession" of a firearm used here. We have interpreted the guidelines to require the government to prove "enhancing" facts by only a preponderance of the evidence. *United States v. Urrego–Linares,* 879 F.2d 1234, 1237 (4th Cir.), *cert. denied,* 493 U.S. 943, 110 S.Ct. 346, 107 L.Ed.2d 334 (1989); *United*

*States v. Powell,* 886 F.2d 81, 85 (4th Cir. 1989), *cert. denied,* 493 U.S. 1084, 110 S.Ct. 1144, 107 L.Ed.2d 1049 (1990). Due process tolerates this unburdensome burden, *McMillan v. Pennsylvania,* 477 U.S. 79, 91–93, 106 S.Ct. 2411, 2418–20, 91 L.Ed.2d 67 (1986), but I reject any notion that it would tolerate less.[5]

U.S.S.G. § 2D1.1(b)(1) is succinct and straightforward: "If a dangerous weapon (including a firearm) was possessed, increase by two levels." If the language of the guideline were the whole of it, I think it would be a very close question whether the district court's finding that Hunter "possessed" a gun is clearly erroneous.

However, the commentary to this guideline considerably lightens the government's burden. It need not prove *possession,* actual or constructive, but rather must merely show the *presence* of a firearm: "The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Thus, unless the defendant can prove that it was "clearly improbable" that a "present" gun (whatever that means) was connected to the offense, the guidelines presume that he pos-

**3.** *See United States v. Boney,* 977 F.2d 624, 635 (D.C.Cir.1992); *United States v. Mocciola,* 891 F.2d 13, 16–17 (1st Cir.1989); *United States v. Rodriguez–Gonzalez,* 899 F.2d 177, 180–181 (2nd Cir.), *cert. denied,* 498 U.S. 844, 111 S.Ct. 127, 112 L.Ed.2d 95 (1990); *United States v. Ryan,* 866. F.2d 604, 608–609 (3rd Cir.1989); *United States v. Juarez–Ortega,* 866 F.2d 747–748–749 (5th Cir.1989); *United States v. Duncan,* 918 F.2d 647, 652 (6th Cir.1990), *cert. denied,* 500 U.S. 933, 111 S.Ct. 2055, 114 L.Ed.2d 461 (1991); *United States v. Fonner,* 920 F.2d 1330, 1332–1333 (7th Cir.1990); *United States v. Dawn,* 897 F.2d 1444, 1449–1450 (8th Cir.), *cert. denied,* 498 U.S. 960, 111 S.Ct. 389, 112 L.Ed.2d 400 (1990); *United States v. Coleman,* 947 F.2d 1424, 1428–1429 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992); *United States v. Rivera–Lopez,* 928 F.2d 372, 372–373 (11th Cir.1991); and this circuit's cases cited in footnote 1 *supra.*

**4.** A defendant's acquittal does not, of course, mean that he is immune to facing evidence concerning the acquitted charge if it is relevant and admissible in some later proceeding with a lesser burden of proof. *See, e.g., Dowling v. United States,* 493 U.S. 342, 348–349, 110 S.Ct. 668, 671–672, 107 L.Ed.2d 708 (1990), and cases cit-

ed therein. *Punishing* him, though, for the charge mocks the themes of fair trial and fair sentence that resound in the Fifth, Sixth, and Eighth Amendments.

**5.** It is true that sentencing judges traditionally considered background facts about a defendant "without any prescribed burden of proof at all." *McMillan,* 477 U.S. at 91, 106 S.Ct. at 2419. But these judges were not "finding facts" of the kind or in the sense that today's district judges do. The evidence heard under the *ancien regime* went into a thinking human mind, to be compared with other like and unlike. evidence, and ultimately producing a *judgment* about the proper sentence. Identifying which "finding of fact" was responsible for which portion of the sentence would have been an idle exercise, because nothing of the sort happened.

Today, every finding made at sentencing has a rigid, quantifiable effect on the defendant's liberty. Of all the levels of confidence a rational mind can have in its resolution of a dispute of fact, "more likely than not" is the minimum. Any lesser standard resides in the realm of irrationality. When life, liberty, or property are at stake, any lesser standard would violate due process.

sessed it. I think that this mandatory, burden-shifting presumption could permit a "possession" finding (and the inexorable deprivation of liberty) on a quantity of proof that falls below the due process minimum; indeed, I fear that it may have done so in this case.

### III.

I know that the momentum of the age is against me, and the circuit "split" is as one-sided as it could be. Nonetheless, we have taken no oath to hew to the well-worn path or ride like flotsam on the current tide of opinion. I hope that, in this or some future case, our court will reconsider the precedents that permit Hunter to be punished for possession of a firearm, notwithstanding his acquittal of the charge and the guidelines' tenuous presumption that the "presence" of a firearm equals its possession.

> In some way, the law must be modified. A just system of criminal sentencing cannot fail to distinguish between an allegation of conduct resulting in a conviction and an allegation of conduct resulting in an acquittal.

*Concepcion*, 983 F.2d at 396 (Newman, J., dissenting from the denial of rehearing en banc).