**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 96-4026

MARY ELLEN GRAVELY,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 96-4040

REGINALD LAMONT MARTIN,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 96-4064

JETAUN O. GRAVELY,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Chief District Judge.
(CR-95-27-R)

Submitted: March 18, 1997

Decided: April 22, 1997

Before WIDENER, WILLIAMS, and MICHAEL, Circuit Judges.

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Marc J. Small, Anthony F. Anderson, Roanoke, Virginia; A. Kristin Shandor, Salem, Virginia, for Appellants. Robert P. Crouch, Jr., United States Attorney, Anthony P. Giorno, Assistant United States Attorney, Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Mary Gravely, Jetaun Gravely, and Reginald Martin were convicted of various offenses related to their dealing in crack cocaine. They appeal, challenging their convictions and sentences on several grounds. We affirm.

I

Danny Marshall, a paid confidential informant for the Drug Enforcement Administration, contacted Roger Pruitt in an effort to obtain crack. On February 6, 1996, Marshall drove Pruitt to a house in Roanoke, Virginia, where Pruitt said he was to purchase crack for Marshall from "Tee-Tee." Pruitt entered the house, which Tee-Tee (Jetaun Gravely) shared with Reginald "Reggie" Martin, paid for crack with money Marshall had given him, and returned with one-quarter ounce of crack that he had purchased from Jetaun.

The same transaction was repeated on February 11, 14, and 15. Marshall then decided to try to buy crack directly from Jetaun. On

2

February 16 he left a note at the house asking that someone contact him. Rose Jackson, the housekeeper, invited him to the house later that day. Jackson met Marshall outdoors, took his money, entered the house, and returned with Marshall's crack.

On February 20, Marshall spoke with Jackson and arranged to purchase one-quarter ounce of crack. Jackson emerged from the house with crack, saying that Jetaun was not at home and that this was "Reggie's dope, and he weighed it out." Jackson told Marshall that Jetaun and Reggie both cooked and sold crack.

On March 8, Marshall contacted Jackson at Jetaun's and Reggie's home and told her he would like to buy one-quarter ounce of crack. Jackson told Marshall that she would beep or call him when she could get the crack for him. Marshall did not hear from her again that day. On March 9, Jackson contacted Marshall, who arranged to buy the crack. Jackson met him outside Jetaun's and Reggie's home and told him that they had to follow Jetaun and Reggie to another location to get the drug. Another car, in which Mary Gravely, Jetaun's mother, was a passenger, drove up, and Jackson informed Marshall that they didn't have to leave because the crack had arrived.

Marshall, Jackson, Jetaun, Reggie, and Mary went inside the house. Mary handed her purse to Jetaun. Reggie and Jetaun took the purse to another room and returned a few minutes later. Jetaun took a package of crack from the purse, broke off a piece, and handed it to Jackson. Jackson gave it to Marshall, who paid for it with three $100 bills. Jetaun returned the purse to her mother, who left. Police stopped the vehicle in which Mary was riding. In her open purse were approximately one ounce of crack, a loaded handgun, and $2000 in cash, including the three $100 bills with which Marshall had bought the crack.

Jetaun, Mary, and Reggie were convicted of conspiracy to distribute crack. Mary was also convicted of distributing, or aiding and abetting the distribution of, crack on March 8 and 9 and possessing crack with intent to distribute it, or aiding and abetting that crime on March 9. She received a 121-month sentence. Reggie also was convicted of distributing crack on February 20. He was sentenced to 262 months in prison. Jetaun was also convicted of distributing crack on

3

February 11, 14, 15, and 16; of distributing, or aiding and abetting the distribution of, crack on March 8 and 9; and possessing with intent to distribute crack, or aiding and abetting that crime, on March 9. She received a 151-month sentence.

II

Mary and Jetaun challenge the sufficiency of the evidence to support all their convictions. Reggie contests the sufficiency of the evidence to support his conspiracy conviction.

A reviewing court will uphold a jury verdict if there is substantial evidence to support it. Glasser v. United States, 315 U.S. 60, 80 (1942). In making this determination, the appellate court views the direct and circumstantial evidence in the light most favorable to the Government to decide whether any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt. United States v. Lowe, 65 F.3d 1137, 1142 (4th Cir. 1995), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3256 (U.S. Oct. 7, 1996) (No. 95-1659).

"To prove a conspiracy to possess [crack] with intent to distribute, the Government must establish that: (1) an agreement to possess [crack] with intent to distribute existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became a part of the conspiracy." United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996) (in banc), cert. denied, ___ U.S. ___, 65 U.S.L.W. 3586 (U.S. Feb. 24, 1997) (No. 96-6868). Each defendant need not know the details of the conspiracy's structure and organization. Id. at 858. "[A] loosely-knit association of members linked only by their mutual interest in sustaining the overall enterprise of catering to the ultimate demands of a particular drug consumption market" may be sufficient to establish the existence of a conspiracy. United States v. Banks, 10 F.3d 1044, 1054 (4th Cir. 1993). Once the existence of a conspiracy is established, only a slight link between a defendant and the conspiracy will support a conviction. United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir. 1992).

There was sufficient evidence to convict the three Defendants of conspiracy. Jetaun and Reggie cooked and sold crack at their home.

4

Mary, at least on one occasion, supplied Jetaun with crack. Marshall purchased the crack from Jetaun, who then gave Marshall's payment to her mother.

The evidence also was constitutionally sufficient to convict Jetaun and Mary of their several convictions for distributing, possessing with intent to distribute, or aiding and abetting the possession or distribution of, crack. Marshall testified that he purchased crack from Jetaun on February 11, 14, 15, and 16. Jetaun also sold Marshall the crack that her mother had brought to her home on March 9. Her mother at the least aided and abetted that distribution. Finally, Mary's purse, which Jetaun had handled and from which she took the crack she sold Marshall on March 9, contained roughly one ounce of crack. This is sufficient to convict both women of possession of the crack found in Mary's purse with intent to distribute it, or aiding and abetting that crime.

III

Mary, Reggie, and Jetaun raise various issues concerning their sentences. Mary and Jetaun first complain about the two-level increase in their offense levels because of the presence of the gun, along with crack, in Mary's purse. USSG § 2D1.1(b)(1).* The guideline provides that, "[i]f a dangerous weapon (including a firearm) was possessed, increase [the offense level] by 2 levels." A defendant "possesses" a firearm for purposes of USSG § 2D1.1(b)(1) if the weapon was merely "present, unless it is clearly improbable that the weapon was connected with the offense." United States v. Hunter, 19 F.3d 895, 896 (4th Cir. 1994).

A codefendant's possession of a firearm in furtherance of joint criminal activity may be used to enhance a defendant's sentence if such possession was reasonably foreseeable to the defendant. United States v. Mena-Robles, 4 F.3d 1026, 1036 (1st Cir. 1993). Because the determination that a firearm was present so as to justify an enhancement is a factual question, we review the determination for clear error. United States v. Apple, 915 F.2d 899, 914 (4th Cir. 1990).

_____

*United States Sentencing Commission, Guidelines Manual (Nov. 1995).

5

In this case, Mary clearly possessed the gun, which was in her purse with crack and drug proceeds. Jetaun also was subject to the enhancement. First, she took control of her mother's purse, from which she retrieved crack and in which she presumably saw the gun. Second, possession of a gun was reasonably foreseeable to Jetaun, as guns are common to drug dealing. The district court's finding that a firearm was present was not clearly erroneous, and the enhancement was appropriate.

Jetaun and Reggie contend that the district court should have neither counted as relevant conduct the crack found in Mary's purse nor converted the cash in her purse to crack weight and attributed that weight to them as relevant conduct. In order to determine the base offense level for a drug offense, the district court must determine the quantity of drugs involved. USSG § 2D1.1(c). The court derives the quantity of drugs from the defendant's "relevant conduct," which includes all acts by the defendant as well as "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." USSG § 1B1.3(a)(1)(B). A "jointly undertaken criminal activity" is defined as "a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not it is charged as a conspiracy." Id. We review factual findings as to relevant conduct for clear error. United States v. D'Anjou, 16 F.3d 604, 614 (4th Cir. 1994).

The district court did not clearly err in attributing the crack and crack weight equivalence of the money in Mary's purse to Reggie and Jetaun. Reggie and Jetaun were fully aware of the events of March 8 and 9: they were ready to drive to Mary's home to pick up the crack; they were present when she arrived at their home; they both went into a back room with Mary's purse; and they both were present when Jetaun sold crack from Mary's purse to Marshall.

IV

We accordingly affirm the convictions and sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

AFFIRMED

6