**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                                    No. 96-4034

LEROY DAVIS,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                                                    No. 96-4035

JERMEL ALSTON,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
James C. Fox, Chief District Judge.
(CR-95-120-F)

Submitted: May 29, 1997

Decided: June 17, 1997

Before NIEMEYER, LUTTIG, and MOTZ, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Thomas Courtland Manning, LAW OFFICES OF THOMAS C.
MANNING, Raleigh, North Carolina; Danny Ferguson, Winston-

Salem, North Carolina, for Appellants. Janice McKenzie Cole, United States Attorney, Thomas B. Murphy, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Leroy Davis and Jermel Alston appeal their 235-month sentences imposed after their guilty pleas to conspiracy to distribute and possess with intent to distribute cocaine powder and crack cocaine. They challenge the district court's determination that the amount of crack cocaine attributable to each of them was 1200 grams. Alston has moved to file a supplemental pro se brief challenging the voluntariness of his plea and the determination of the quantity of crack cocaine attributable to him. We grant the motion to file the supplemental brief and affirm.

Alston pled guilty to the charge in the indictment, which included both powder and crack cocaine. His plea was without the benefit of a plea agreement limiting his participation. Alston now asserts that he thought he was pleading guilty to a powder cocaine conspiracy only. Because Alston's plea constitutes an admission of the material elements of the crime charged, see McCarthy v. United States, 394 U.S. 459, 466 (1969), he cannot now invalidate his plea by stating that he intended to plead guilty to participation in a drug conspiracy whose primary substance was powder cocaine. The type and quantity of drugs was left open by the plea, and the government had the burden of proving these by a preponderance of the evidence. See United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993).

The calculation of the quantity of drugs attributable to a defendant is a factual determination, which should be upheld unless clearly erro-

2

neous. See United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990). The court may estimate, if necessary, the amount of drugs which are part of the defendant's relevant conduct, taking into consideration similar known transactions. United States Sentencing Commission, Guidelines Manual, § 2D1.1, comment. (n.12) (Nov. 1995); United States v. Johnson, 943 F.2d 383, 387-88 (4th Cir. 1991). The sentencing court may consider hearsay testimony to establish drug quantities. See United States v. Bowman, 926 F.2d 380, 381 (4th Cir. 1991).

Special Agent Chris C. Jackson of the Drug Enforcement Administration ("DEA") testified at the sentencing hearing that Tammy Wortham was approached by Alston about becoming a drug courier between Henderson, North Carolina and New York City. Alston then introduced Wortham to Davis.

On behalf of both Alston and Davis, Wortham made ten to twelve trips to New York and brought back cocaine. She initially transported grapefruit-sized packages, which Agent Jackson stated weighed approximately eight or nine ounces each. The package size increased until Wortham was arrested with 345 grams of cocaine powder. Wortham stated that she had transported one other package that was the same size as the one she had when arrested and several that were a bit smaller, which Agent Jackson estimated at 300 grams each. Wortham was paid after each trip with one-fourth to one-third of an ounce of crack cocaine.

The total amount of cocaine Wortham transported from New York to Henderson was estimated at 3095 grams. Special Agent Jackson also testified that although Wortham was arrested while transporting powder cocaine, she was always paid in crack cocaine. Three other women who made trips for Defendants were also paid with crack. Additionally, Jackson testified that Wortham told him about a trip she made with the Defendants to shop for a cooker--a device used to convert cocaine powder to crack. Also, five drug dealers who had dealings with Alston and Davis told Agent Jackson that they had always obtained crack, not powder, from Defendants.

Jackson testified that, according to the DEA lab, when a kilogram of powder cocaine is cooked, it results in 800 grams of crack cocaine. Cf. United States v. Hyppolite, 65 F.3d 1151, 1158 (4th Cir. 1995)

3

(citing <u>United States v. Ricco</u>, 52 F.3d 58, 63 n.5 (4th Cir.), <u>cert. denied</u>, ___ U. S. ___, 64 U.S.L.W. 3247 (U.S. Oct. 2, 1995) (No. 95-5502)), <u>cert. denied</u>, ___ U.S. #6D6D 6D#, 64 U.S.L.W. 708 (U.S. Apr. 22, 1996) (No. 95-8395). The sentencing court conservatively estimated that less than half of the 3095 grams of powder was converted to crack cocaine, yielding 1200 grams of crack.

Based on the evidence that Defendants' dealings were in crack cocaine and the absence of evidence of any distribution of cocaine powder, this finding as to the quantity of crack cocaine attributable to the Defendants is supported by the preponderance of the evidence, <u>see Gilliam</u>, 987 F.2d at 1013, and is not clearly erroneous. <u>See Goff</u>, 907 F.2d at 1444.

Therefore, we affirm Alston's conviction and affirm the Defendants' sentences. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>

4